IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DANIEL VASSALLO,<br><br>                Petitioner,<br><br>        vs.<br><br>JIM MACDONALD, Warden, La Palma<br>Correctional Center, JEFFREY BEARD,<br>Secretary, California Department of<br>Corrections and Rehabilitation,[1]<br><br>             Respondent. | No. 2:13-cv-01534-JKS<br><br>MEMORANDUM DECISION |

Daniel Vassallo, a state prisoner represented by counsel, filed a Petition for Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Vassallo is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at the La Palma Correctional Center in Arizona.  Respondent has answered, and Vassallo has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

On January 4, 2010, Vassallo was charged with five counts occurring on December 31, 2008: two counts of forcible rape, assault with a deadly weapon by means likely to produce great bodily injury, false imprisonment by violence, and criminal threats; one count occurring during January 2007: forcible rape; and four counts occurring on March 24, 2009: kidnapping, dissuading a witness from testifying, forcible rape, and disobeying a domestic relations court

---

[1]     The names of the respondents are corrected to reflect the petitioner's incarceration in the La Palma Correctional Center in Eloy, Arizona, as well as the continuing jurisdiction of the California Department of Corrections and Rehabilitation.  Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts; *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994).  The term "Respondent" utilized in the body of this order is intended to refer to both respondents, who are jointly represented by the California Attorney General.

order.  As to the March 24, 2009, forcible rape count, the information alleged a kidnapping

enhancement under California Penal Code § 667.61(a),(d).  As to all the March 24, 2009, felony

counts, the information alleged that Vassallo was on bail at the time of the offenses.

On February 3, 2010, a jury failed to reach verdicts on one of the December 31, 2008,

rape counts, the false imprisonment by violence count, the January 2007 rape count, and the

kidnapping enhancement alleged as to the March 24, 2009, rape count.  The trial court declared a

mistrial as to those counts and struck the enhancement.  The jury found Vassallo guilty of the

remaining seven counts and found true the on-bail allegation.  On June 29, 2010, the trial court

sentenced Vassallo to an aggregate prison term of 28 years and 4 months.

Through counsel, Vassallo appealed his conviction, arguing that: 1) the court erred in

overruling defense objections to the admission of prior bad acts evidence; 2) the court erred in

admitting hearsay evidence that the victim told a friend that Vassallo had abused her;

3) Vassallo's rights to due process and a fair trial were violated based on the court's rulings that

suggested that the court was biased in favor of the prosecution; and 4) cumulative error

warranted reversal of his conviction.  On March 14, 2012, the California Court of Appeal

affirmed Vassallo's conviction in an unpublished, reasoned opinion.  *People v. Vassallo*, No.

A129625, 2012 WL 867995, at *19 (Cal. Ct. App. Mar. 14, 2012).

Again proceeding through counsel, Vassallo filed in the Court of Appeal a petition for a

writ of habeas corpus.  In this petition, Vassallo argued that his confrontation rights were

violated when the prosecution cross-examined a defense witness and the trial court admitted

evidence about Vassallo's relationship with a woman who refused to testify at trial.  He likewise

contended that his trial counsel was ineffective for failing to object to that testimony and again

2

argued that the cumulative effect of the errors in his trial warranted reversal of the judgment. The Court of Appeal also denied the petition on March 14, 2012, and addressed the claims in its opinion affirming Vassallo's judgment. *Vassallo*, 2012 WL 867995, at *15-19 & n.10.  Vassallo moved for rehearing, which the Court of Appeal also denied without comment on April 5, 2012.

Vassallo then petitioned to the California Supreme Court for review of his claims that: 1) his confrontation rights were violated when the prosecution improperly cross-examined a defense witness about Vassallo's relationship with a woman who refused to testify at trial; and 2)  his rights to due process and a fair trial were violated based on the court's rulings that suggested that the court was biased in favor of the prosecution.  The Supreme Court summarily denied review.  Vassallo timely filed a Petition for a Writ of Habeas Corpus to this Court on July 29, 2013.

## II. GROUNDS/CLAIMS

In his counseled Petition, Vassallo asserts two grounds for relief.  First, he argues that the prosecutor committed misconduct and violated his right to confrontation when the prosecutor improperly cross-examined a defense witness about Vassallo's relationship with a woman who did not testify.  He additionally contends that the trial court violated his right to due process by questioning the prosecution's domestic violence expert in a manner that suggested that the court believed that the victim was suffering from post traumatic stress disorder and was thus credible in her testimony.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

4

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Claim 1. Prosecutorial Misconduct/Confrontation Violation

Vassallo first argues that the prosecutor's questioning of a defense witness about Vassallo's relationship with a former girlfriend who did not testify at trial constituted misconduct that violated his right to confrontation. Vassallo raised his prosecutorial misconduct and confrontation violation claims in his state petition for a writ of habeas corpus, and the Court of Appeals addressed the claims in its opinion affirming Vassallo's judgment. *Vassallo*, 2012 WL 867995, at *15-18.

The record indicates that, prior to trial, the prosecutor moved under California Evidence Code §§ 1108[2] and 1109[3] to admit evidence of prior uncharged acts by Vassallo—namely, Vassallo's prior sexual offenses against E.C. and his prior acts of domestic violence against T.M. At the hearing on the motion, the prosecutor told the court that his office had been in contact with T.M. and that T.M. had informed them that she feared for her safety and did not want to testify.  The prosecutor further informed the court that his office was not going to compel her to testify.

The prosecutor nonetheless asked the court for a ruling on the admissibility of T.M.'s testimony.  The court ruled that evidence of prior acts of domestic violence against T.M. "is admissible not only under 1109, but I could see it coming in under [Evidence Code §] 1101)(b) MO."[4]  The court concluded that the evidence was "not inflammatory; none of those facts are so

---

[2]     Section 1108 provides, in relevant part, that in a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense is admissible unless it is substantially more prejudicial than probative.  CAL. EVID. CODE § 1108.  In *People v. Falsetta*, the California Supreme Court held that admitting evidence of prior sexual assaults under § 1108 did not deny the defendant due process.  986 P.2d 182, 189-90 (Cal. 1999).

[3]     Under § 1109, evidence of a defendant's commission of other domestic violence may be admitted to prove propensity to commit the charged domestic violence.  CAL. EVID. CODE § 1109.

[4]     Section 1101(b) permits:

    "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

CAL. EVID. CODE § 1101(b).

egregious compared to what [Vassallo] is charged with today that would keep any of this out . . . under [Evidence Code §] 352,[5] were 'TM' wish to be cooperative [sic], I would allow that in under the 1109."

During the defense portion of the case, Vassallo offered the testimony of Jeremiah Bennett.  Among other statements, Bennett testified that Vassallo was "very passive" and not a violent or angry person.  Bennett additionally testified that he had spent a lot of time with Vassallo and T.M. during the year that he observed their relationship and that "they seemed really, really normal, and I didn't see a possessive nature at all."

On cross-examination, Bennett testified that, although he did not think that Vassallo was controlling, Vassallo did become jealous, adding, "I think it was more with [T.M.], you know." He testified, however, that he believed that Vassallo was not violent.  When asked whether he was aware that T.M. had accused Vassallo of repeatedly beating her, Bennett replied, "I am aware of that because she also accused me and my girlfriend of something completely erratic as well, so—."  He said that he was aware that T.M. had made several accusations against Vassallo. He was not aware that T.M. had accused Vassallo of putting a knife to her throat and repeatedly threatening to kill her.  Bennett was aware that T.M. had accused Vassallo of beating her so badly that her eye was swollen shut.  He did not know that T.M. had accused Vassallo of

_____

        [5]        Section 352 provides in pertinent part:

        "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

CAL. EVID. CODE § 352.

dragging her from a store in Virginia and pushing one of her friends, but he did know that T.M. had filed a restraining order against Vassallo in Virginia.  The prosecutor then asked, "Now, hearing all the things that I mentioned to you about all those individuals, does that change your opinion at all as to whether or not you think Mr. Vassallo to be a violent person?"  Bennett replied, "No, because I know Daniel."

      A.     Prosecutorial Misconduct

Vassallo contends that the prosecutor's questioning of Bennett about T.M. constituted misconduct because the questions "clearly implied that [Vassallo] had in fact repeatedly and severely beaten, assaulted, and threatened [T.M.]."

"A prosecutor's actions constitute misconduct if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).  The "appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  "On habeas review, constitutional errors of the 'trial type,' including prosecutorial misconduct, warrant relief only if they 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Wood*, 693 F.3d at 1113 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

As an initial matter, Respondent argues that the state appellate court found Vassallo's claim forfeited under California's contemporaneous objection rule and thus the claim is procedurally defaulted from federal habeas review.  Docket No. 13-1 at 34 (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (a federal court will not review a claim if the state

court's rejection of the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment).  The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial.  *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).  Vassallo argues in his Traverse that his claim is not procedurally defaulted because the California appellate court did not "actually . . . rel[y] on the procedural bar as an independent basis for its disposition of the case" and was not "explicit in its reliance on a procedural default."  Docket No. 15 at 6.  The appellate court's decision unambiguously noted that defense counsel did not object to the prosecutor's cross-examination.  *Vassallo*, 2012 WL 867995, at *16.  However, the court addressed the merits of the claim and did not clearly indicate whether counsel's failure to object was at least in part the basis for the court's denial.  It therefore appears that the procedural default may not operate to bar federal review of this claim.  *See Jones v. Ayers*, No. CIV S-97-2167, 2008 WL 906302, at *11 (E.D. Cal. Mar. 31, 2008) (denying respondent's motion to dismiss claim as procedurally barred where state court's denial of claim, which mentioned procedural default, was based on its merits and not on defense counsel's failure to raise a contemporaneous objection at time of trial).

This Court does not need to determine whether Vassallo's claim is procedurally defaulted because, in any event, Vassallo fails to demonstrate that the prosecutor committed misconduct when he cross-examined Vassallo's character witness about alleged prior bad acts.  In considering Vassallo's claim, the Court of Appeal recited California law governing the use of specific bad acts to cross-examine a defendant's character witness:

As a general rule, evidence of a defendant's prior bad acts is considered highly prejudicial and is inadmissible because of the danger the jury will convict merely because of the defendant's propensity to commit crimes regardless of whether his or her guilt is proven beyond a reasonable doubt. (*People v. Alcala* (1984) 36 Cal. 3d 604, 630-631; Evid. Code, § 1101.)  An exception to this rule arises when a defense witness, other than the defendant, testifies to the defendant's good character traits.  (*People v. Ramos* (1997) 15 Cal. 4th 1133, 1173 (*Ramos*).)  In such a case, the prosecutor may ask the witness if he or she has heard of acts by the defendant inconsistent with those character traits, as long as the prosecutor has a good faith belief that the acts actually took place. (*Ibid.*)  The rationale for permitting this cross-examination is that it tests the validity of the witness's good character testimony.  (*People v. Hempstead* (1983) 148 Cal. App. 3d 949, 954 (*Hempstead*).)

The rule allowing cross-examination of good character witnesses regarding bad acts does not make actual evidence of the bad acts (independent of the character witness's opinion or reputation testimony) admissible.  (*People v. Felix* (1999) 70 Cal. App. 4th 426, 431-432.)  Thus, the prosecutor may only ask the cross-examination questions in the "have you heard" form; the prosecutor may not ask the witness if they know about the bad acts.  (*People v. Marsh* (1962) 58 Cal. 2d 732, 745-746.)  Again, the latter form of the question is precluded because of the danger it will be used "to introduce evidence of specific wrongful acts by inquiries as to knowledge of such acts . . . ." (3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 248, p. 319.)  Similarly, the prosecutor's examination is confined to the answers given by the witness; it is misconduct for the prosecutor to attempt to elicit more details about the bad acts by further questioning or to offer into evidence independent proof of the bad conduct. (*People v. Neal* (1948) 85 Cal. App. 2d 765, 770 (*Neal*); 3 Witkin, Cal. Evidence, *supra*, Presentation at Trial, § 248, p. 320.)  Underlying these restrictions on the scope of the cross-examination is the principle that the prosecutor may not use this avenue of character witness impeachment to present evidence of the defendant's prior bad acts as established fact.  (*Neal*, *supra*, 85 Cal. App. 2d at p. 770.)

*Vassallo*, 2012 WL 867995, at *16.

The appellate court consequently rejected Vassallo's claim:

While the prosecutor questioned Bennett rather extensively regarding [T.M.'s] allegations, the jury was informed that the prosecutor's statements could not be used as evidence.  The jury was not instructed as to how to consider cross-examination of a character witness (see CALCRIM No. 351).  However, it was instructed that the questions asked by the attorneys are not evidence.  We will assume the jury followed this instruction.  Further, in his closing argument, the prosecutor told the jury that the references to [T.M.] were not evidence and that they should not consider them as evidence in making their decision: "The evidence about [T.M.], that is not evidence.  I didn't—[T.M.] was not here to testify.  There could be a variety of reasons why; you shouldn't speculate as to why, but that's not evidence for you to consider to prove

whether or not in fact he's guilty of these crimes.  That evidence was brought up for other, more limited purpose-type things.  For example, when his good friend comes in here and says, 'Oh, he's not a violent guy at all.'  Really?  Were you aware of all these other accusations, about the fact that—and does that change your opinion based on the fact that three women are accusing him of these things?  And that's why you got to hear that information, but you should not, and [defense counsel] is correct, that is not, because I didn't prove to you that that happened to [T.M.], you should not consider for that purpose of guilt here."  We thus conclude that even if misconduct was committed, there is no likelihood of prejudice as the jury was properly informed as to how to consider the information regarding [T.M.].

*Vassallo*, 2012 WL 867995, at *17 (internal citations and footnote omitted).

To the extent that Vassallo argues that the prosecutor's cross-examination violated California state law, such error cannot support the granting of habeas relief in federal court.  *See Estelle*, 502 U.S. at 67-68, 71-72 (federal habeas corpus relief is not available for violations of state law or for alleged error in the interpretation or application of state law).  Moreover, Vassallo cannot show that the state court's decision unreasonably applies or contravenes federal law.  Federal law, like California law, dictates that once Vassallo presented character witnesses testifying to his good character, including that Vassallo is not a violent person, he opened up the door to questions about his character, and the prosecutor could properly cross-examine Vassallo's character witnesses about their knowledge of Vassallo.  *See Michelson v. United States*, 335 U.S. 469, 479 (1948) ("The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him."); *People v. Hinton*, 126 P.3d 981, 1028 (Cal. 2006) ("When a defense witness gives character testimony, the prosecutor may inquire of the witness whether he or she has heard of acts or conduct by the defendant inconsistent with that testimony, so long as the prosecutor has a good faith belief that such acts or conduct actually took place." (citation omitted)).  The Ninth Circuit has cautioned that such

questioning "requires a good faith belief in the misconduct of the defendant which was the subject of the question." *United States v. Davenport*, 753 F.2d 1460, 1463-64 (9th Cir. 1985). The questions were based on police reports that were referred to in the record, and it therefore appears that there was a good faith basis for the questions.

Furthermore, even if the prosecutor's questions constituted misconduct arising to the level of a due process violation, such conduct provides grounds for habeas relief only if that misconduct is prejudicial under the *Brecht* harmless error test. *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004). As the state court found, the record establishes that the jury was instructed that the attorneys' questions were not evidence and that the prosecutor emphasized to the jury that the incidents were not evidence against Vassallo but used only to test the credibility of his character witness. *Vassallo*, 2012 WL 867995, at *17. Additionally, in light of the voluminous record as a whole, in which numerous witnesses testified for both the prosecution and the defense, the relatively few questions asked to Bennett about T.M. cannot be said to have had "substantial and injurious effect or influence in determining the jury's verdict." *Wood*, 693 F.3d at 1113 (citation omitted). Accordingly, Vassallo cannot demonstrate misconduct or prejudice, and he is therefore not entitled to relief on this ground.

B.      Confrontation Violation

Vassallo similarly contends that the prosecutor's cross-examination introduced inadmissible "testimonial hearsay" which violated his right to confrontation because T.M. did not testify at trial.

Respondent also argues that the state appellate court found Vassallo's confrontation claim forfeited under California's contemporaneous objection rule and thus the claim is

12

procedurally defaulted from federal habeas review.  Docket No. 13-1 at 34 (citing *Coleman*, 501

U.S. at 729-30.  Unlike the appellate court's decision on Vassallo's prosecutorial misconduct

claim, the appellate court clearly based its denial of the confrontation claim on Vassallo's failure

to object and alternatively denied the claim on the merits.  *Vassallo*, 2012 WL 867995, at *18

("[Vassallo's] confrontation clause claim is forfeited because he raises it for the first time on

appeal.  Even assuming the claim is not forfeited, we find it lacks merit.").  Accordingly, because

the state appellate court explicitly held that the claim was forfeited under California's

contemporaneous objection rule, Vassallo's confrontation claim may be deemed procedurally

defaulted here.

      In any event, Vassallo fails to demonstrate that his confrontation rights were violated by

the prosecutor's cross-examination of Bennett.  In *Crawford v. Washington*, 541 U.S. 36, 51

(2004), the Supreme Court clarified Sixth Amendment jurisprudence and held that the

Confrontation Clause guarantees a defendant's right to confront all witnesses who "bear

testimony" against him.  Thus, the Supreme Court explained that the Sixth Amendment prohibits

the admission of "testimonial" hearsay unless the declarant is unavailable and the defendant had

a prior opportunity for cross-examination.  *Id.* at 68.  *Crawford* and its progeny have made clear

that Confrontation Clause protections are limited to testimonial statements.  *See Giles v.*

*California*, 554 U.S. 353, 376 (2008) ("[O]nly testimonial statements are excluded by the

Confrontation Clause."); *Whorton v. Bockting*, 549 U.S. 406, 420 (2007) (Confrontation Clause

has "no application" to non-testimonial statements).

      As the state appellate court found, "[i]n the present case, the prosecution did not

introduce any direct evidence, testimonial or otherwise, of [T.M.'s] accusations against

[Vassallo].  Thus, the cross-examination of Bennett did not *elicit* testimonial hearsay.  Instead the references to [T.M.] were contained only within the prosecutor's questions."  *Vassallo*, 2012 WL 867995, at *18.  The trial court instructed the jury that the prosecutor's questions were not evidence.  The court also instructed the jury, "Do not assume that something is true just because one of the attorneys asked a question or suggested that it was true."  This Court must assume in the absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis v. Franklin*, 471 U.S. 307, 323-24 & n.9 (1985).  The allegations of which Bennett was unaware did not constitute evidence because they were contained only in the prosecutor's questions and were not confirmed by Bennett.  To the extent that Bennett testified that he was aware of the allegations, his awareness was based on firsthand knowledge, and he did not testify as to any particular statement.  Vassallo points to no clearly established Supreme Court precedent that compels relief under those circumstances.  Moreover, for the same reasons that he could not establish prejudice with respect to his prosecutorial misconduct claim, he cannot establish that he was prejudiced by any violation of his right to confrontation.  *See Brecht*, 507 U.S. at 637.  Vassallo is therefore not entitled to relief on his Confrontation Claim either.

       Claim 2. Due Process Violation

Vassallo additionally argues that he "was denied due process as a result of the judge's questioning of the prosecution's domestic violence expert which reflected that the judge believed [the victim] was suffering [from] post-traumatic stress as a result of 'severe domestic abuse' inflicted by [Vassallo]."

When the victim was testifying on direct examination, the prosecutor started to play the tape of her 911 call at the time of the December 31, 2008, incident.  The victim appeared to have a strong reaction and asked that the tape be stopped.  The court called a recess and asked for medical attention.  Outside the presence of the jury, the court stated that "the witness had what the Court would describe as a physical and emotional severe reaction."  Defense counsel disagreed and argued that the victim "was having difficulty recalling the events in this case, and was actually more troubled by her inability to reflect what she had said in the past."  The court then called the jury panel back and, with the agreement of the parties, informed the jury that the witness was unavailable and proceeded with another witness.

Nancy Lemon testified as a domestic violence expert for the prosecution.  At the end of her testimony and while on the record and in the presence of the jury, the court asked if a victim of domestic violence could suffer from post-traumatic stress.  Lemon stated that "some victims of domestic violence do actually suffer from post-traumatic stress disorder" and described the term for the jury.  When asked what could trigger post-traumatic stress in a victim, Lemon replied, "Anything that reminds them of the initial traumatic incident could trigger that."

The court then asked Lemon, "Again, let me give you a hypothetical.  Let's say you had an alleged victim testifying for hours or days and seemed somewhat coherent, and at some point, for example, a 911 recording of their original [sic] was played sort of out of the blue for them, and is it, um, could that trigger a sort of reaction hearing their original voice on the 911?"  After Lemon agreed that it could trigger a reaction, the court asked her what type of reaction what would typically see.  Lemon responded that she was not a mental health expert, but began to

15

answer the question, at which point defense counsel objected based on lack of foundation, and

the court sustained the objection.

In support of this claim, Vassallo argues:

> The court's questions to Lemon did not convey neutrality, but rather suggested to the jury that the court found [the victim] to be credible and believed that she had had a genuine post-traumatic stress-induced reaction which was caused by the "severe domestic abuse" to which she had been subjected by [Vassallo].  The court's apparent belief in [the victim's] credibility was particularly egregious in this case since the entire case turned almost exclusively on [her] credibility, [Vassallo] strenuously disputed the events as testified by [the victim], and [the victim's] lack of credibility was in fact [Vassallo's] main defense at trial.

Although the appellate court agreed that the trial court erred in its questioning of Lemon,

it nonetheless rejected the claim after concluding that it was insufficient to establish misconduct:

> While we do not see any problems with the way in which the trial court dealt with [the victim's] reaction to the playing of the 911 tape, we are troubled by the court's subsequent questioning of Lemon concerning PTSD.  As noted ante, outside the presence of the jury and just prior to Lemon's testimony, the court indicated its belief that [the victim] had just experienced a post-traumatic reaction to the hearing of the 911 call.  The court also stated it would not mention this belief to the jury as it would not be relevant.  When questioning Lemon, however, the court asked her a hypothetical question that restated exactly what had just occurred during [the victim's] testimony and asked if the extreme reaction could have been caused by PTSD.  We agree with [Vassallo] that this questioning suggested to the jury that the court found [the victim] to be credible, and that it believed she had experienced a genuine post-traumatic reaction caused by the alleged severe domestic abuse to which she had been subjected by [Vassallo].  [Vassallo] had strenuously disputed [the victim's] version of the events she testified to, and her lack of credibility was his central defense at trial.
>
> Although the trial court's single disparaging remark to defense counsel and its questions to Lemon regarding PTSD were unfortunate, these relatively isolated incidents are insufficient to establish misconduct.  "'"[O]ur role . . . is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid.  Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial."'" (*People v. McWhorter* (2009) 47 Cal. 4th 318, 373.)  Here, the conduct was not so severe as to have denied [Vassallo] a fair trial.[FN11]

> FN11. We note the jury did not find [Vassallo] guilty of two of the charged rapes. This suggests that the jury carefully considered [the victim's] veracity.

16

*Vassallo*, 2012 WL 867995, at *15.

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. *See In re Murchison*, 349 U.S. 133, 136 (1955). But a petitioner claiming judicial bias must overcome a "presumption of honesty and integrity" on the part of the judge. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Moreover, a claim of judicial bias based on improper conduct by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state judge's conduct was improper; rather, the question is whether the state judge's conduct "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted). It is generally appropriate for a trial judge to participate in the examination of witnesses when necessary to clarify the evidence, confine counsel to evidentiary rulings, control the orderly presentation of the evidence, or prevent undue repetition of testimony. *United States v. Morgan*, 376 F.3d 1002, 1008 (9th Cir. 2004). "A trial judge's participation oversteps the bounds of propriety and deprives the parties of a fair trial only when 'the record discloses actual bias . . . or leaves the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality.'" *United States v. Parker*, 241 F.3d 1114, 1119 (9th Cir. 2001) (quoting *United States v. Mostella*, 802 F.2d 358, 361 (9th Cir. 1986)).

While the Court is likewise troubled by the court's questioning of Lemon, under the above-described standard and given the deference this Court must afford the state court's reasoned opinion under the AEDPA, Vassallo is not entitled to relief on this claim. *See Duckett*, 67 F.3d at 740-41 (holding that even where trial judge's conduct toward defense was "troubling"

17

and in some instances reflected "frustration and hostility," habeas relief was not warranted because "when considered in the context of trial as a whole," the judge's actions were "not of sufficient gravity to warrant the conclusion that fundamental fairness has been denied"); *see also Morgan*, 376 F.3d at 1008-09 (finding federal district judge's extensive and suggestive examination of witness did not require reversal where other testimony, as well as court's curative instructions, made it highly unlikely that "a substantial right of a defendant was affected").

## V. CONCLUSION AND ORDER

Vassallo is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 25, 2014.

      /s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge